Before we begin, I think Brother Reina and I would like to welcome to the bench Judge Richard Toronto. We will be honored by his service for years to come. Our first case this morning is JIMMY SPRINKLE v. SHINSEKI. Mr. Cameron. Your Honors, may it please the Court, I'm John Cameron and I represent Mr. Sprinkles. We appeal the Veterans Court's decision in this case because we believe that it misinterprets the fair process doctrine that that court created in Thurber and the other cases leading up to Young. We believe that the Veterans Court held that essentially that notice of the evidence that was produced and that was used by the regional office to deny Mr. Sprinkles' claim was sufficient to satisfy the fair process doctrine. And we believe that under the doctrine and specifically under the last case, Young, that the VA and the regional office were required to produce the actual evidence, particularly the physician's affidavit at page 78 through 88 of the appendix. Counsel, can I ask you a question? Sure. This court hasn't itself said that there is a kind of fair process implication of the statutory regime. Is that right? That's correct. That's correct. I mean, the Veterans Court has issued these decisions and based on the Supreme Court's decision in Gonzalez v. United States, and none of the parties, the Secretary or the Veterans have ever, as far as I can tell, ever appealed the fair process doctrine to this court. So it's new to the court. I mean, there's some early decisions in, like, 95, like Yeoman, that refer to Thurber, and I think it referred to the Thurber doctrine, but that was a year after Thurber was issued. Counsel, for us to agree with you on the fair process point, do we have to say that, again, apart from due process, there is a implication of the statutory regime that requires fair process, and then say it encompasses the right that you say you were denied here? Yes, Your Honor. I think that's right. I think – we're not asking the court, this court, to conclude that there's a due process right to this evidence because in Thurber and the subsequent cases, the Veterans Court did not rely on the due process clause of the Fifth Amendment. That court relied on the statutory framework and the regulatory framework and, of course, relied on Gonzalez in order to reach the conclusion that at every step in the process of this Veteran-friendly system, there should be notice to the Veteran and an opportunity to respond and present as evidence and defend. Didn't the Veteran in this case, though, receive notice in an adequate fashion? Didn't he have the medical opinion in front of him, et cetera, that kind of makes this case different from Young and also causes me to question whether there's some failure of fairness? Okay. Let me address that question specifically. The Veterans Court did conclude, as I said earlier, that notice of the evidence was satisfactory. We received notice in this supplemental statement case in October 21 – and this is at 89 of the appendix – October 21, 2009. And on page 90, there is essentially a two-sentence summary of the new doctor's affidavit. Now, the doctor's affidavit is at 78 of the appendix. The main part of that physician's opinion is on page 86, and the two sentences from the statement case do not adequately provide notice of what this physician said. Now, to answer your question directly, in October of 2009, the regional office received this new evidence, and then two weeks later, in the supplemental statement case, denied its claim again without providing this evidence. We weren't provided this evidence until May of 2010, about seven months later. Now, the problem, the prejudice with this is that we had essentially less than 30 days to respond to 500 pages of records that were essentially dumped on us 30 days before the board issued its final decision. Counsel, can I ask you – footnote 1 of the Court of Veterans Claims, the Bill of Veterans Claims, talks about what feels to me right at the heart of any problem you may have with your fair process claim, and that is you did not ask the board to postpone its decision until you got the records that you three times requested and that the government agreed. They had to give you. It just took a long time for them to give it to you. Right. I guess I'm curious about that. Right. Why we didn't request it. Well, we didn't request it because we expected – I think we requested the records like three times. I think that we expected to get the evidence in, and then we would be provided with reasonable notice, a reasonable response period to reply to it. In Young, do you know – I don't remember that the opinion in Young says anything about a request for postponement to the board. You were counsel in Young, right? I was. Was there a request for postponement there? There was not. And do you also happen to remember, was there in fact a supplemental statement of the case? There was. Okay. But that's the – the heart of the problem is it's essentially a lack of the evidence. Essentially we're talking about a fairly complex medical opinion that in order to dispute requires that an expert medical physician go through this man's history and dispute these particular allegations, these particular medical opinions. What would be wrong with saying that under any fair process doctrine that exists, there's no violation as long as you have the ability to ask the board to postpone a decision until the critical evidence, which you say this is, is in your hands for a reasonable period to review and respond to. Well, I mean, I can understand your question, but this is supposed to be not an adversarial proceeding where, you know, the veteran has to make sure that he's not taken advantage of, you know, by a premature board decision. This is – this is a non-adversarial position – system where, you know, he's supposed to be provided the evidence and the opportunity to respond and submit his evidence and so the board and the regional office can make a new decision and then the board can make a final decision, an appellate decision. It's not an adversarial proceeding, but it's one in which Mr. Sprinkled is represented by counsel. That's correct. And you did receive – it seems to me your argument is that you received the opinion. You received – certainly you received notice of the opinion and you received it in – along with a document dump, let's say. Are you saying you didn't have time to sort through that? Is that the problem? Well, we did sort through it, Your Honor. We did sort through it, and then it took us quite some time to do that, and then we were preparing a motion, a request for an extension to the board, and then we got the board decision in. When you see the applicable regulations and you see the time running on you, then why didn't you ask the board for more time to be able to fully digest an opinion once you got it? Well, I mean, that's what I planned to do in the motion for extension, and I think that we didn't have those documents for 30 days when we got the board decision in. So I don't think that you're saying that we need to respond within 5 or 10 days and ask for an extension when we should have been provided reasonable notice of those documents in 2009. Do you have any experience with requests to the board to postpone a decision on a matter that's coming back up on remand, which I gather is subject to a statutory requirement to be expeditious? If you had made a request for postponement, is there a reasonable chance the board would have granted it and sat on the matter? It's possible. And one other question. We haven't talked about the regulation. I gather you make something in the blue brief, your opening brief, of the 901, 903 regulation, and then you open your reply brief saying you're not relying directly on that. Can you just tell me, and I'll ask the government of this too, what is it in the language of that regulation that does not apply to a board request for a medical opinion, not directly to it, but to the regional office to be essentially forwarded? The section, the regulation at 2901, 903, do not apply where the board remands the case. It applies where the board directly orders the medical examiner. I was having trouble finding something in the language of the regulation that says what this is, I think, this is intended to be, I guess, what's often called a helpful question. Why does the regulation restrict itself, what language in it, and maybe I just missed it and I'll be told, to medical opinions requested by the board, not directly, but through its order to the regional office? Well, I think you're right. There's no language that specifically restricts it, but the language says if the board requests a medical opinion. The board did that in its order. It remanded the case and said he shall be provided a medical examination and the medical examiner shall write an opinion. That's correct. Okay, well, maybe the government will. Well, my argument was that it's been interpreted, that regulation has been interpreted to apply to the direct order by the board of medical opinions. And it hasn't been, so far, interpreted to apply to medical opinions ordered by the regional office pursuant to a remand. I want to save you a reply. I do, Your Honor. Thank you. Thank you, Mr. Cameron. Thank you. Thank you, Mr. Phillips. May it please the Court. The Veterans Court properly applied the law to the facts in this case, and for that reason, this decision should be affirmed. I'd like to make two points in response to Mr. Sprinkle's arguments. First is that Mr. Sprinkle has received all of the process that he seeks now before this court. He had the opportunity to request the compensation of pension examination. He did so. He also had a number of opportunities to respond to that prior to actually receiving it. But most importantly, as this court has picked up on, Mr. Sprinkle had the opportunity to ask for more time after receiving that. Have you said in your brief or, and I guess separately, I didn't see that the Court of Veterans Claims said that the period he had from May 2nd or 6th or so until the decision in June 2nd was itself an adequate opportunity to do everything with that medical opinion that was needed? That is, I took it that both your argument and, more importantly, the Court of Veterans Claims' opinion is exactly as if he never got this opinion before the June 2nd decision, because there's no finding that that was a reasonable period. Your Honor, there would have been no finding by the Veterans Court that it was a reasonable period, because there is no requirement for a defined period outside of the two periods that are defined for this case, too. No, but he made a fair process argument, and I assume the fair process argument is not numerically based. It's, I need enough of a period to review in order to review and respond to the medical opinion. And I don't think the Court says you had that reasonable period once you had the opinion, which obviously has more content to it than the two-sentence summary in the SS whatever. I think I understand your Honor's question. The Veterans Court did address that, if not directly, at least indirectly, in that first footnote, where it noted that Mr. Sprinkle had not requested more time. Now, I don't believe that the Court actually stated in the decision that there was the opportunity for Mr. Sprinkle to request time, even after he received it. So I think the fair process concept was addressed by the Veterans Court in that footnote, noting that Mr. Sprinkle had opportunities to ask for more time. Additionally, the Veterans Court also noted that Mr. Sprinkle had 30 days after receiving the SSOC, which provided everything that was required, giving him notice of the determination in the medical, I mean the pension and compensation examination. Mr. Sprinkle also had a 90-day period once his case was sent back to the Board. I'm sorry, but he didn't, until May 2nd or whenever he got the opinion, he did not actually see the medical opinion, including the critical couple of sentences that talk about whether short-term use of Thorazine, I think it was, can cause the muscular spasms. All he had was the shorter, less informative summary in the supplemental statement of the case. That is correct, Your Honor. He only had the supplemental statement of the case, but he had also undergone a physical examination. So he may have heard or been told something by the doctor looking at him. But Mr. Sprinkle was given, in the SSOC, all that was required by the regulations. So he was put on notice of the basis for the continued denial of his pension. Do you know any other context in which, outside national security and whatnot, in which a tribunal gets to rely on evidence that the other side has not previously seen? I can't, I don't have any directly analogous situation. That's what happens here, assuming, and I have to assume this, that the period from early May to June was not a reasonable period for him to respond to the evidence. So we have a tribunal, the board, that has, in fact, relied on evidence, crucially. It gave more, used more details from the medical opinion than he had ever seen before until early May. He didn't have a reasonable period to respond to it. I agree he had a period to ask for an extension, but he didn't have a reasonable period to respond to it according to any finding. And the board is relying on this evidence, expressly relying on this evidence, to reject his claim. Well, maybe he didn't have a defined period as your Honor is looking for, but Mr. Sprinkle had various protections within the VA regulations already to afford him the opportunity to seek whatever document he may choose in the evidentiary record. But you didn't give it to him. You didn't give it to him until too soon before the decision. There was a delay, your Honor, but he was provided with the document. He had the notice of what was in the document and what was being relied on. There was an explanation that the pension and compensation examination found that his limited exposure to Thorazine, while it recognized his previous supplemental evidence showing that there could be a link addressed in this context and found that that link wasn't made. There wasn't any explanation. So Mr. Sprinkle was fully aware of the basis for why the VA was going to continue to deny it, and he had the opportunity then to actually ask for the document. The reason the VA does not provide all documents at the outset is because there is a large administrative and cost burden on these, because a lot of these records are very long and very voluminous. In this case, Mr. Sprinkle's record, what he sought was 525 pages. To account for that, the VA allows the claimant to request whatever document he determines that he needs. Is it your position that any time that the government provides the SSOC that the fair process doctrine has been satisfied? Well, the fair process doctrine, your Honor, doesn't necessarily go to the SSOC. What the fair process doctrine and, more importantly, 38 CFR 20.903 address are expert medical opinions, which is not what this compensation and pension examination was. The expert medical opinions are something that's not developed in the normal course of the evidentiary process before the regional office here. That's one way of looking at it. The other way of looking at it is that the fair process doctrine requires an opportunity to respond to evidence or other matters that come up during the course of the claim. And it seems to me that you're arguing that in this case, at least, the SSOC satisfied any right or any expectation that Mr. Sprinkle would have had under the fair process doctrine. Well, I don't know if the fair process doctrine is the right way to look at this, Your Honor, but yes. The SSOC, which provided Mr. Sprinkle with a notice of the bases for why his claim was continuing to be denied, was in accordance with all of the regulations of the VA and provided him with everything that was required, a summary of the evidence and a notice of the bases for that. If that was insufficient for Mr. Sprinkle's purposes, he had, at all points during this process, the opportunity to request the doctrine. If the SSOC has a summary of the medical opinion, as it did, that means that the government had possession of the medical opinion in order to prepare the summary. Why wasn't that provided directly to Mr. Sprinkle once the government received it? The reason the VA doesn't provide all of the records at the time and gives a summary is because the records are very large in a lot of these cases, and there is a cost-benefit analysis that has been done. But we're talking about a document that goes to the crux of the matter. He has a claim for service connection. This medical opinion addresses the service connection issue. At minimum, why not provide the document that breaks the case for the veteran? If I understand the court's question, was there some determination by the VA then that this document was the crux of the case? I don't know that that's the correct way to look at it. The way the VA looks at this, it looks at the totality of the record. So if it's going to provide any document, it would have to provide all documents. That's the cost-benefit analysis. The case doesn't turn on one document. The RO would have looked at the totality of the record in addition to this new compensation and pension examination and determined whether or not there was a service connection. So Mr. Sprinkle, while he may not have been provided with the specific document that's now at issue, he had every opportunity to ask for that document. He received that document when he asked. But he was provided a more fulsome explanation in the supplemental statement of the case that the basis for his continued denial was that there was no evidence of service connection for his two conditions. Mr. Phillips, you said a moment ago that you don't think the fair process doctrine is the way to deal with this case. Is your administrative efficiency argument the alternative? What is your view of this case? The way we understand the fair process doctrine in this case goes to a specific situation where we're dealing with 20.903 where the VA, after there's been a full exposition of the evidentiary record, the board determines that it needs some additional expert medical or legal opinion. So it goes out and requests that because that is not accounted for in the normal evidentiary process. There is an additional time and there is the requirement that that specific expert report be provided to the claimant so that he can address it because it wouldn't have been something he would have ever received notice of or had included in a summary of the evidence that the SSOC deals with. So I don't know that I, have I addressed your Honor's question? No, you're saying that this is different from Young. Yes. This is, you're seeing the fair process doctrine in a narrower context than giving them time and resources to respond to any particular part of the record. Yes, Your Honor, and to further point, at page 472 of the Young decision, the issue there where fair process came into play, the claimant had requested a particular document but never actually provided that document. So that was the context of the fair process doctrine for the Young case. I'm going to have to interrupt you, and I think we've been through this before. I don't understand what difference there is between not providing it and providing it with not enough time to do anything with it, which is what happened here by assumption because there is no finding that the 30-day period was in fact enough time. So it's the same as if he hadn't had it. But Your Honor, there is no 30-day period that is required in this situation. Any period that would be enough to respond, there is no finding that that's what happened here, which means it's the same as if he hadn't gotten it yet before the June decision. If I understand Your Honor's question, then the two periods before is not what we're focusing on. We're looking at after he actually received it, Your Honor. Yes. Okay. Mr. Sprinkle had all the time between when he received it and the decision was issued. And he asked, and he asked, and he asked, and he asked, and eventually he got it. And then the question is, why is that any different from not having gotten it before the June board decision, given that there is no finding that that period, early May to June, was enough for him to do anything with it? The reason is, Your Honor, because he had received notice of what was in that document initially in the SSOC. Let's not go back over that. Assume that I think that there is more information in the medical opinion than was in the SSOC. Then how is Young different from this? Because Young wasn't dealing with that situation, Your Honor. He was dealing where a request was made and the document was never provided. I'm going to assume that this is the same thing as that on the never provided, because it was provided with not enough time to do anything about it. That's equivalent as not having had it. In Your Honor's hypothetical then, it sounds as if you view this case as the same as Young. In Young, I don't remember anything in the opinion about any request for a postponement of the board decision from the November 2004 to the April 2006 decision. Young didn't lose his claim because he failed to request the board to postpone the decision until he got this document, which he had requested, right? I believe that's correct, Your Honor. That the request hadn't been fulfilled, the document was never provided. I guess then I'm having a hard time seeing why this case is different from Young. It's different from Young, Your Honor, because the issue in Young, as I said, was a request for a document that wasn't provided. Here, Mr. Sprinkle made the request for the document and received it. If he believed that there wasn't sufficient time after he received the document, he had every opportunity to ask for more time, but did not avail himself of that process. Young could have asked from December of 2004 until March of 2006 to the board to please not decide the case until he got what he had asked for. That ability didn't defeat Young's claim. Potentially, Your Honor, but the way we read Young is that Young was dealing with the VA not fulfilling the request. The VA has this process because of these voluminous records where it will provide any document that a claimant asks for as long as the claimant asks for that document. In Young, the VA didn't comply with its own process of providing it in response to the request. Can I just ask this question, which I raised with Mr. Cameron? The 901-903 regulatory, I guess two questions. Does that provision ever cover an examination of the patient, of the claimant, that then goes into the opinion, or is it all, dear doctor, here are some paper records, tell me what you think about it? The VA would only use 903, Your Honor, to do exactly what you're saying. After it's received a completed evidentiary record, there is some issue, whether it's legal or medical, which the board doesn't feel it knows enough about to answer. So it seeks this, which is essentially an expert advisory opinion. But my specific question is, do those expert advisory opinions ever include examination, physical examination of the claimant where he walks into the room and the doctor is there and does a word on it? No, Your Honor, as far as I understand, they do not. It is always a paper review. Okay, and then the related question is, what language in that makes it applicable only when the board asks for the opinion to be sent directly to it rather than to be given to the regional office with ultimate forwarding back up the chain? The language, and I'll refer to the actual statutory base, which is 38 U.S.C. 7109, the language is that it says the board itself may secure an advisory opinion from one or more independent medical experts who are not employees of the department. So that's the language. But when the board, whenever it was here, ordered the regional office to secure a medical opinion based on an examination, how does that language not cover that? Because this statutory provision is only used when the board itself requests this advisory opinion. It wouldn't require the RO to develop an expert report. It would merely send any evidentiary development back to the regional office. Thank you. Thank you, Mr. Philip. Mr. Cameron, you have a little over three minutes remaining. Okay, Your Honor, thank you. I would like to respond to just a few points very briefly. And in referring to the evidence that the VA regional office used in October of 2009, it appears to be only about 10 pages. There really is not a great deal of administrative burden in copying 10 pages or 15 pages. But you have to identify which are the 10 pages. I'm talking about the- No, no, I mean, imagine now I'm thinking of myself sitting somewhere as a regional officer, and I have 1,000. Right, I understand. And there are maybe 1,500, maybe 2,000, thousands of these cases. That's right. And you want me to go through every single one of the 1,000 pages in each one of those 1,000 cases? Haven't I done pretty well if I give you a summary and then kind of put the burden on you to come back at me and ask for what you might need beyond that summary? Well, Your Honor, in the October 2009 settlement settlement case, the VA essentially referred to only one medical opinion, the October 7, 2009 medical opinion that was developed on remand. That was the new evidence that was developed. But your November 20th document request did not focus specifically on that. It said, give me everything back to 2005. You didn't even single it out. Well, I intended to try to collect everything. I know it included it, but you asked for the 500 pages. Well, I didn't expect it to be 500 pages. I expected that there would be one, two, three medical opinions at the most. I didn't expect that I would get 525 pages. But to answer your question. Did you have to expect that? Well, I don't think that it's hard to know what the VA has developed. But when the VA's own document, the SSOC, refers to one medical opinion by one doctor, I don't think there's a great deal of administrative inconvenience in copying 10 pages and sending it out. Which 10? The 10 pages. I know, but I have to figure out. It's, again, you're asking me to decide the case before I decide it. You're asking me to go through the whole record and say, that's what I'm going to use to really decide the case. I will send that to the veteran in advance. The SSOC said that they relied on the October 2009 C&P examination by Dr. Aidan Wansberry at 78, the appendix. And that was the crucial medical opinion. The VA denied his claim without providing the evidence to him, provided a two-sentence summary of the evidence, and could easily have sent him that medical opinion and said, you know, you have 30 days to respond or 60 days to respond. Once we've given you, once they have given you the summary, isn't it really more incumbent upon you to say, I need something more? Based on this summary, I need something more. Well, it shouldn't be. Under the Fair Process Doctrine, you know, where these new evidences developed, you know, the Fair Process Doctrine requires that the VA produce copies of the new evidence, produce and provide a reasonable period to respond to it. All right. Thank you very much. Thank you, Your Honor. Our next case is.